**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
RICHARD HATCH,                          )
                                        )
            Petitioner,                 )
                                        )
    v.                                  )     Civ. Action No.   09-11490-NMG
                                        )
HARLEY G. LAPPIN, Director of Bureau    )
of Prisons, and JAMES M. CUMMINGS,      )
Sheriff of Barnstable County            )
                                        )
            Respondents.                )
_____)

**RESPONDENTS' INITIAL RESPONSE TO PETITIONER'S**
**PETITION FOR WRIT OF HABEAS CORPUS**

The Respondents, Harley G. Lappin and James M. Cummings ("Respondents"), file this

initial response to Petitioner Richard Hatch's ("Petitioner") petition for writ of habeas corpus.

The Respondents file this partial response for purposes of the hearing set for September 14,

2009, and will file a more complete pleading with this Court on September 18, 2009, pursuant to

the Court's September 10, 2009 service order.  Doc. 4.

**I.      STATEMENT OF FACTS**

On September 9, 2009, Petitioner filed a petition for writ of habeas corpus and motion for

expedited hearing.  Doc. 1.  By his petition, Petitioner alleges that he was placed in solitary

confinement at the Barnstable County Correctional Facility ("BCCF") after participating in

interviews with the media, and criticizing government officials.  Doc. 1 at ¶ 1.  Petitioner

contends that he is being held at BCCF in violation of his First and Fifth Amendment rights.

Doc. 1 at ¶ 2.  The Petitioner seeks an order directing the Bureau of Prisons ("BOP") to release

him from physical custody, and to return him to home confinement to serve out the remainder of

his sentence. Doc. 1 at p. 8.

On September 10, 2009, this Court entered a service order ordering, *inter alia*, service of the petition on the Respondents [Doc. 4], and entered an electronic order scheduling this case for a hearing on September 14, 2009.

## II.    ARGUMENT

### A.    The Petition Fails To Challenge The Fact Or Duration Of Petitioner's Incarceration And Should Therefore Be Dismissed

Petitioner's petition fails to challenge the fact or duration of his incarceration, but instead seeks relief from the conditions of his confinement. While a habeas corpus petition may be the appropriate means to challenge the "fact or duration" of a person's incarceration, it is inapplicable to proceedings challenging the conditions of confinement, as in this case. Kane v. Winn, 319 F.Supp.2d 162, 213 (D. Mass. May 27, 2004) (Young, J.) (citing Heck v. Humphrey, 512 U.S. 477, 481-483 (1994)). Indeed "various courts in this Circuit and elsewhere have dismissed habeas petitions (or individual claims contained therein) that challenged conditions of confinement rather than the fact or duration of confinement." Id. (citing Melham v. Farquharson, 2003 WL 21397987 at *1 n.1 (D. Mass. June 17, 2003) (Woodlock, J.) (declining to address a habeas petitioner's claims as they related to conditions of confinement); Do Vale v. I.N.S., 2002 WL 1455347 at *9 (D.R.I. June 25, 2002) (dismissing same claims); Barnes v. I.N.S., 2001 WL 1006077 at *7 (D.Me. Aug. 30, 2001) (recommending dismissal of claims); Kamara v. Farquharson, 2 F.Supp.2d 81, 89 (D. Mass. 1998) (Saris, J.) (dismissing same claims)).

Accordingly, as this petition fails to challenge the fact or duration of Petitioner's confinement, and instead seeks relief from the conditions of his confinement, the petition should

be dismissed.

**B.    Petitioner's Remand To Barnstable County Correctional Facility Is Appropriate And Within The Rules Of Petitioner's Confinement**

Petitioner is a federal prisoner who was convicted in the United States District Court of Rhode Island of two counts of attempting to commit tax evasion, and one count of filing a false tax return.  He was sentenced to 51 months' imprisonment, followed by three years of supervised release.  Petitioner claims that he was removed from home confinement, and placed in "solitary confinement"[1] at the BCCF after he participated in interviews with the media, and criticized government officials.  Doc. 1 at ¶ 1.  He contends that he is being held in violation of his First and Fifth Amendment rights.  Doc. 1 at ¶ 2.  Contrary to Petitioner's allegations, Petitioner was placed in administrative segregation at BCCF not because he participated in an interview and made statements critical of the government, but because he participated in media interviews without prior approval from the BOP, as required by BOP regulations.

"[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Pell v. Procunier, 417 U.S. 817, 822 (1974) (upholding prison regulation precluding face-to-face interviews of prison inmates by the media).[2]  "In the First Amendment context a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent

---

[1] Upon information and belief, Petitioner was placed in administrative segregation upon his remand to BCCF.  This is a standard placement for a return of inmates to higher custody pending completion of the disciplinary process.

[2] See also Hammer v. Ashcroft, 570 F.3d 798 (7th Cir. 2009) (holding Bureau of Prisons could enforce a system-wide rule against personal or video interviews between prisoners and reporters in the context of a maximum security facility).

with his status as a prisoner or with the legitimate penological objectives of the corrections system." Id.  These rights are not unfettered, however.  "The [institution's] administrator must have the power to restrict the time, place, length and frequency of the interview, and to make sure that inmates are protected from interviews where constitutional rights of the individual may be involved." Burnham v. Oswald, 342 F.Supp. 880, 886 (W.D.N.Y. May 16, 1972).  "In construing such claims, courts owe substantial deference to the professional judgment of prison administrators." Chiang v. Lappin, 2008 WL 2945434 at *7 (D.Md. July 24, 2008) (citing Beard v. Banks, 548 U.S. 521, 528 (2006)).

In this case, Petitioner was not denied access to the media, or a face-to-face interview. To the contrary, on August 12, 2009, the BOP approved Petitioner's request for an interview with the *Today* show to take place on August 17, 2009.  Doc 1-4 at p. 3.  On August 17, 2009, in addition to interviewing with the *Today* show, Petitioner also conducted interviews with NBC Channel 10 (a local NBC affiliate in Rhode Island), and Access Hollywood.  Id.  Petitioner did not have approval for interviews with NBC Channel 10 or Access Hollywood.  Id.  Accordingly, an incident report was written on August 18, 2009 for Petitioner's unauthorized contact with the public[3].  Id.  On August 19, 2009, the BOP learned that Petitioner also conducted a radio interview with WPRO News Talk Radio in Rhode Island without obtaining prior permission from the BOP.  Id. at p. 1.  As a result, a second incident report was written.  Id.  Because of the disciplinary incident reports, the BOP instructed the Barnstable County Sheriff's Office ("Barnstable") to return Petitioner to BCCF, a higher level of custody than home confinement.

---

[3] The incident report lists the incident as "Unauthorized Contact with the Public" under Prohibited Act Code 327.  Doc. 1-4 at pp. 1, 3.

Petitioner's confinement at BCCF is due to his failure to obtain approval for media interviews, a BOP regulation that he complied with for his interview with the *Today* show.

Pursuant to an Intergovernmental Agreement between BOP and Barnstable, Barnstable provides, *inter alia*, secure custody, housing, and care, including medical services, for BOP inmates at BCCF. Barnstable is under a contract with BOP for services that include providing electronic monitoring of BOP inmates, such as Petitioner. While in Barnstable's custody, Barnstable has physical control over BOP inmates, as well as the power to exercise disciplinary authority with respect to inmates.

Pursuant to BOP Program Statement 7300.09 ("Community Corrections Manual"), any media request to interview an inmate at a contract facility must be approved. Exhibit A (Program Statement) at 2.3.3(b) ("Contacts with the News Media"). Under this Program Statement, an inmate must agree to the interview, and must sign a consent form in advance. Id. In this case, Petitioner failed to obtain prior approval for his interviews with two news media outlets, Access Hollywood and NBC Channel 10, as well as for his interview with a radio station, WPRO. Similarly, Petitioner failed to comply with Barnstable's Policy and Procedure with regard to contact with the media. Pursuant to Barnstable's policy, "all media access requests shall be written and submitted to the Sheriff", and no inmate may be photographed, taped or video recorded, or filmed unless and until Barnstable's Sheriff receives written approval from the BOP. Exhibit B (Barnstable Media Policy) at Procedure B(3)(b) and (h). At the time of his unauthorized media interviews, Petitioner failed to obtain prior approval from Barnstable.

The Community Corrections Department ("CCD") Electronic Monitoring Agreement ("Agreement"), which Petitioner signed, represents that "the Electronic Monitoring Program is

an extension of the confines of the Barnstable County Correctional Facility." <u>Exhibit</u> <u>C</u>. By

signing the Agreement, Petitioner agreed to "comply with all BCCF rules and regulations while

on community release." <u>Id</u>. Petitioner also acknowledged receiving a copy of the Electronic

Monitoring Participant's Handbook, and understanding the rules, expected behavior, and loss of

privileges of the program. <u>Id</u>. Furthermore, when Petitioner was placed on home confinement,

Petitioner understood that his "placement on Home Confinement status is a privilege which may

be revoked by the Community Corrections Manager ("CCM")." <u>Exhibit</u> <u>D</u> (Conditions of Home

Confinement). Petitioner agreed that, during home confinement, he would abide by special

instructions given to him by the Community Corrections Center ("CCC") or Probation. Ex. D at

¶ 13.

     Petitioner violated his Agreement, and the conditions of his home confinement, by failing

to abide by the instructions given to him by Barnstable Deputy Sheriff Robert Aldrich on at least

ten (10) different occasions, and by having unauthorized contact with the media. Deputy Aldrich

> repeatedly instructed Petitioner to refrain from any form of unauthorized media
> contact. Petitioner was verbally reminded upon each field visit that any and all
> unauthorized media contact could result in his immediate return to higher
> custody. Field visits and telephone contacts were conducted on the following
> dates during calendar year 2009: June 25; July 10, 13, 14, 16, 23, and 29; August
> 5, 10, and 17.

<u>Exhibit</u> <u>E</u> (Declaration of Deputy Robert Aldrich) at ¶ 3.

     Petitioner understood that unauthorized media contact could result in his return to higher

custody, i.e. the BCCF. Nonetheless, despite knowing the BOP's requirement that he obtain

prior approval before conducting a media interview, Petitioner violated the terms of his

Agreement, and the conditions of his home confinement, by participating in three (3)

unauthorized media interviews. Thus, Petitioner was remanded to the custody of BCCF pending

6

disciplinary proceedings, as would be the case with any other BOP inmate who violates BOP

rules and regulations.  Petitioner's access to the media is not the issue, as he was granted

approval to conduct a media interview.  His removal from home confinement and remand to

BCCF for conducting unauthorized media interviews is not in contravention of any First

Amendment rights Petitioner may have.  Petitioner's confinement at BCCF is a direct result of

his rules violation, his violation of the terms of his Agreement, and his violation of the

conditions of home confinement.

## III.    <u>CONCLUSION</u>

Wherefore, for the reasons set forth herein, and for those that may be argued orally or

within the more complete pleading to be filed on September 18, 2009, the Respondents

respectfully request that Petitioner's petition for writ of habeas corpus be dismissed.


Respectfully submitted,

MICHAEL K. LOUCKS
Acting United States Attorney


By:    <u>*/s/ Eve A. Piemonte Stacey*</u>
Eve A. Piemonte Stacey
Assistant U.S. Attorney
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
Dated: September 12, 2009                    (617) 748-3100


7

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 14, 2009.

/s/ Eve A. Piemonte Stacey
Eve A. Piemonte Stacey
Assistant United States Attorney