UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Richard Hatch,<br>           Petitioner,<br><br>v.<br><br>Harley G. Lappin, Director of Bureau<br>of Prisons, and James M. Cummings,<br>Sheriff of Barnstable County,<br><br>           Respondents. | )<br>)<br>)<br>)<br>)   CA Number 09-cv-11490<br>)<br>)<br>)<br>)<br>) |

**Petitioner's Supplemental Memorandum of Law
In Support of Petition for Habeas Corpus**

**Preliminary Statement**

It has now been twenty-nine days since Petitioner was taken from his home and placed into solitary confinement at Barnstable County Correctional Facility, a day after he appeared on television and radio criticizing the government's prosecution of his case. Respondents argue that Petitioner broke a rule and must be punished, a position that ignores Petitioner's substantial First Amendment claim and asserts that punishment may be imposed for violation of a rule that flatly violates the United States Constitution. The rule, moreover, was nowhere clearly stated and it almost appears that Respondents are making these rules up as they go along. Citing a prohibited act, then a policy, then a contract and, finally, a verbal warning, Respondents have sought to argue that prison rules don't stop at the prison walls. Yet every rule they cite is unable to withstand even the most superficial scrutiny because they were never meant to apply in the home

1

confinement setting. Likewise, Respondents' arguments cannot survive a Constitutional challenge because the government is unable to show a valid penological reason for curtailing Petitioner's First Amendment right to speak publicly. While the Respondents talk about "law and order" and put Petitioner through a sham disciplinary proceeding, Petitioner continues to serve out the punishment imposed on him in violation of his rights.

## Argument

I. **The First Amendment Prohibits the Bureau of Prisons from Enforcing a Rule Prohibiting Media Interviews by a Person in Home Confinement or Limiting the Number of Such Interviews; No Government Interest, Much Less a Compelling Interest, is Served by a Limitation on the Number of Interviews Given by Petitioner.**

A rule or regulation requiring prior approval for a person in home confinement to contact the media violates the free speech protections of the First Amendment because the government has no valid penological objective for limiting such speech. As discussed more fully in Petitioner's first Memorandum of Law, prison regulations that restrict constitutionally protected activities are permissible only if "they are reasonably related to legitimate penological interests and are not an exaggerated response to such objectives." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (quoting *Turner v. Safley*, 482 U.S. 78, 87(1987) (internal citations and quotations omitted). The decisions of the Supreme Court clearly establish that even inside the prison setting, a prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1976).

In agreeing to an interview by *The Today Show*, Respondents conceded that there was no penological or security concerns that outweighed Petitioner's rights. Respondents cannot now argue that they had a valid concern about the subsequent interviews that took place at the same

2

time and place and that involved smaller media outlets. There was no added consequence to the government's interest in the additional reporters from the same network, on the same day, in the same home, using the same technical crew and equipment interviewing the Petitioner.

Having conceded that there were no security concerns, the Respondents demonstrated that they had a different interest in curtailing Petitioner's speech. Deborah Mann, Community Corrections Manager of the BOP, testified in Petitioner's Disciplinary hearings, "I informed the [Petitioner's] attorney that I might have entertained approving one interview, but that I was not going to be approving a 'media blitz.'" Pet. Supp. Ex. A. The Supreme Court has repeatedly held that when the government seeks to restrict the number of people that can hear a message, it violates the First Amendment rights of the person seeking to broadcast that message.

In *Buckley v. Valeo*, the Supreme Court recognized that the First Amendment prohibits the government from "redu[cing] ... the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." 424 U.S. 1, 19 (1976) (striking down limitations on campaign spending because it limited the size of the audience to which the candidate could speak). *See also Randall v. Sorrell*, 548 U.S. 230, 246 (2006) (striking down Vermont campaign finance laws on First Amendment grounds because they reduced the size of the audience that could receive message).

In *Meyer v. Grant*, the Supreme Court struck down a Colorado law that prohibited paying petition circulators because the rule would limit the number of people who would convey the message and, therefore, would limit the "size of the audience they can reach." 486 U.S. 414, 423 (1988). *See also Buckley v. American Constitutional Law Found.*, 525 U.S. 182, 195 (1999) (striking down a Colorado law that required initiative-petition circulators to be registered voters

3

because the rule would limit the number of circulators and, therefore, the audience reached by the petition).

The First Amendment prohibits the government from controlling the size of the audience to which the Petitioner can speak. Seeking to prevent a "media blitz" by restricting the number of media outlets to which Petitioner could speak was an unconstitutional curtailment of Petitioner's rights.

### II. The Government Still Cannot Point to a Rule that Required Petitioner to Obtain Approval Before Speaking to the Media.

Respondents argue that Petitioner simply is being punished for a rule violation, yet in the course of the disciplinary proceedings and in the proceedings in this Court they have been unable to point consistently to one rule that required Petitioner to obtain prior approval for media contacts. Instead, Respondents have variously described Petitioner's conduct as a violation of four different rules none of which are applicable.

In the BOP disciplinary proceedings, which are required in order to sanction a prisoner for a rule violation, Petitioner has been accused of and found guilty of violating only one rule: "Prohibited Act 327." Pet. Ex. C. As discussed in Petitioner's first Memorandum of Law, this rule *on its face* does not apply to persons in non-federal facilities or persons in community pre-release programs.[1]

Respondents also filed a Barnstable County Disciplinary Report, which simply refers to the federal disciplinary file. There, Petitioner is accused of violating "Rule 35," defined as a "violation of any contractual agreement relating to classification placement or community based

---

[1] BOP Policy Statement 5270.07, *Inmate Discipline and Special Housing Units*, http://www.bop.gov/policy/progstat/5270_007.pdf ("These provisions do not apply to a federal inmate designated to a non-federal facility (e.g., inmates serving Federal sentences in state facilities or contract CCCs").

4

programs." Pet. Supp. Ex B.  There was no investigation into a violation of Rule 35 and there has been no finding of guilt or innocence relating to this rule.  This is likely because Respondents can point to no contractual violation.  Petitioner signed two contracts relating to his community confinement and electronic monitoring.  Pet. Supp. Ex C and D.  Neither contract mentions media contacts.

In their brief and at oral argument, Respondents pointed to two additional rules, neither of which are the basis for Petitioner's disciplinary sanction.  As such, they are largely irrelevant because neither the BOP nor Barnstable County has accused Petitioner of violating them in the administrative disciplinary proceedings, This Court need not address rules that form no part of the disciplinary proceedings through which Petitioner is being sanctioned.

However, a simple reading of these additional rules confirms that they also do not apply here.  Respondents argue in their preliminary brief that BOP Program Statement 7300.09 should apply to Petitioner.  On its face, the policy applies to interviews only inside the prison. (Resp't. Ex. A. "A media request to interview an inmate at *a contract facility* must be approved by the facility Director") (emphasis added).

Respondents also argue, again *ex post*, that the Barnstable County Media Policy governs here.  This policy also is clearly meant to apply only in the correctional-facility setting.  Resp't. Ex. B. ("B.1. Representatives from the news media may be allowed *access to the Sheriff's Office* at a time, place and manner consistent with *institutional* security needs" ... "C.1. Said interviews, if conducted, will be subject only to the limitations necessary to maintain *order and security*") (emphasis added).

Lastly, in addition to the written rules that Respondents cite, they argue that Deputy Sheriff Aldrich gave Petitioner repeated verbal warnings that he could be returned to jail if he

engaged in unauthorized interviews. The attached affidavits from the Petitioner and two witnesses who were present when Aldrich went to Petitioner's home call into question whether Aldrich ever gave these warnings. Pet. Supp. Ex. E, F and H. Assuming, *arguendo*, that Aldrich did so, those warnings do not stand in the place of a properly promulgated BOP or Barnstable County rule or regulation.[2]

Respondents' numerous attempts to create a rule that does not exist merely confirm what courts have held for decades – that "imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment," and that the government may only curtail those rights for valid penological or security reasons. *Beard v. Banks*, 548 U.S. 521, 528 (2006); *Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[C]hallenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system"). Neither BOP nor Barnstable County has promulgated a rule that requires persons in home confinement to obtain prior approval before speaking to the media. Such a rule would be unconstitutional, and clearly does not exist.

---

[2] Respondents' attempt to create a factual issue is no impediment to this Court's ability to rule on the Petition. Such a factual debate is a distraction from the core First Amendment issue at stake and is based on the record of disciplinary proceedings that were so improvised and incomplete that the Bureau of Prison, itself, ordered a re-hearing and re-investigation. In doing so, the BOP cited numerous deficiencies including missing evidence, failure to allow Petitioner's witnesses to testify and failure to document the evidence used to support the guilty findings. As Petitioner' supplemental affidavit makes clear, the issue of consent was clearly resolved the morning before the interviews took place. (Pet. Supp. Ex. H). Respondents' argument that Deputy Aldrich gave Petitioner repeated notice of an unconstitutional rule adds little to their argument. The case can and should be decided on First Amendment grounds.

### III. The Sanction Imposed by the Government Is Properly Challenged Under a Habeas Corpus Petition

A petition seeking release from imprisonment into less restrictive pre-release conditions is properly brought under 28 U.S.C. § 2241. *See e.g. Muniz v. Sabol*, 517 F.3d 29, 33-34 (1st Cir 2008) cert denied, --U.S.--, 129 S.Ct. 115 (2008) (granting habeas petition that challenged the validity of a BOP regulation delaying petitioners' transfer from jail to community corrections); *Brennan v. Cunningham*, 813 F.2d 1 (1987) (granting habeas petition as proper vehicle for claim seeking reinstatement in halfway house work release program).

In addition, Petitioner has now been found guilty through the disciplinary and has been sentenced to forfeit ten days of good time credits, which will extend his sentence by ten days. Thus, this petition challenges the length of Petitioner's confinement, an issue that is squarely within the bounds of habeas jurisdiction. *Rogers v. United States*, 180 F.3d 349, 358 (1st Cir 1999) ("prisoners may ... seek judicial review of any jail-time credit determination ...by filing a habeas petition under 28 U.S.C. § 2241") (internal citations omitted); *Kane v. Winn*, 319 F. Supp. 2d 162 (D.Mass. 20004) ("Although a habeas corpus petition is the appropriate means to challenge the "fact or duration" of incarceration, actions challenging the conditions of confinement reside more in the heartland of civil actions") (internal citations omitted).

### Conclusion

For all the above-stated reasons, Petitioner respectfully requests this Honorable Court to issue a writ of habeas corpus directing BOP immediately to release Petitioner from custody or transfer him to serve the remainder of his sentence under home confinement and to dismiss the disciplinary charges currently brought against him.

Respectfully submitted,

/s/Michael R. Schneider
Michael R. Schneider
BBO # 446475
/s/Ryan M. Schiff
Ryan M. Schiff
BBO# 558852
SALSBERG & SCHNEIDER
95 Commercial Wharf
Boston, MA 02110
617-227-7788


/s/John Reinstein
BBO # 416120
/s/Laura Rótolo
BBO# 665247
American Civil Liberties
Union Foundation of Mass.
211 Congress Street
Boston, MA 02110
(617) 482-3170


Sept. 16, 2009

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants September 9, 2009.

/s/Laura Rótolo

Sept. 16, 2009